UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN SMITH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Defendant. ) | Cause No. 2:11CR53-PPS |

## **OPINION AND ORDER**

A jury convicted John Smith of a slew of crimes involving drugs and guns, and I sentenced him to the mandatory minimum - a term of imprisonment of 480 months. Smith now moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, arguing that he was denied effective assistance of counsel based on his first counsel's purported failure to address a conflict of interest and that his rights to a speedy trial were violated. For the reasons that follow, I will deny Smith's motion.

### **Background**

The facts of the case are exhaustively set out in the opinion of the Seventh Circuit from the direct appeal. *United States v. Smith*, 792 F.3d 760, 761-63 (7th Cir. 2015). It is enough to say for present purposes, that after some initial investigation, Smith, a local law enforcement official, became the target of a sting operation conducted by the Bureau of Alcohol, Tobacco, Firearms, and Explosives. A friend of Smith's, who was actually working as an informant for the ATF, introduced an ATF agent to Smith as "Danny," and Danny told Smith that he needed protection while conducting a drug

1

transaction. Later, Smith met Danny at an Indianapolis gun show, where Smith purchased three firearms for Danny.

Four days later, Smith and another police officer recruited by Smith, Terry Carlyle, met Danny at a restaurant. They discussed a trip involving the transfer of a large quantity of cocaine (or so Smith thought) where Smith would serve as protection. Smith indicated that he would bring two guns with him on the trip, and he also offered to sell Danny additional weapons. At the end of the meeting, Danny told Smith that the upcoming run would be between Indianapolis and Merrillville, Indiana.

Smith accompanied Danny on two runs, picking up a total of 25 kilograms of what Smith believed was cocaine. During both trips, Smith drove Danny's car and carried firearms. A week after the second trip, Smith met a purported drug dealer, who was actually another undercover agent, and sold him 13 firearms for $8,000.

A grand jury indicted Smith for one count of conspiring to possess with intent to distribute more than five kilograms of cocaine; two counts of attempting to possess with intent to distribute more than five kilograms of cocaine; one count of transferring firearms knowing they would be used in a drug trafficking crime; and three counts of possessing a firearm in furtherance of a drug trafficking crime. The grand jury also indicted Carlyle.

Smith and Carlyle were arrested on April 14, 2011, one week after the indictment. That same day, attorney Ralph Staples entered his appearance on behalf of both Smith and Carlyle. [DE 9.] On April 19, 2011, Magistrate Judge Rodovich presided over Smith

and Carlyle's arraignment and detention hearing. [DE 10.] The Court became aware of Staples' dual representation and addressed the issue with both Smith and Carlyle. [*Id.*]

In particular, the Court engaged in a colloquy with both Smith and Carlyle regarding this potential conflict of interest. Magistrate Judge Rodovich asked Smith if he understood that Staples would be representing both him and his co-defendant. [DE 217 at 2.] Magistrate Judge Rodovich informed Smith that he had the "right to be represented by your own attorney if you choose" and that there "are potential problems when one attorney represents two defendants." [*Id.*] After listing several examples of the potential problems that may arise when one attorney represents two co-defendants, Magistrate Judge Rodovich asked Smith whether he had discussed this issue with Staples and whether he was satisfied with the fact that Staples was representing both him and his co-defendant. [*Id.* at 3-4.] Smith replied yes to both questions. [*Id.*]

Staples continued to represent both defendants for some time, and he filed a total of four motions to continue the jury trial. In addition, Staples was suspended from the practice of law for one month during the pendency of the charges against Smith. As the prosecution against Smith and Carlyle proceeded, Carlyle, who was still represented by Staples, agreed to plead guilty, and he changed his plea on September 30, 2011.

The sequence of the subsequent events is important so I will lay them out below in some detail. At the time Carlyle changed his plea, I accepted his plea of guilty but reserved my decision on whether or not to accept his plea agreement pending the completion of the presentence investigation report. [DE 24.] After the completion of the

presentence investigation report, on January 18, 2012, Staples filed a motion to withdraw from his representation of Carlyle, explaining that the attorney-client relationship had broken down. [DE 34.] Carlyle was appointed new counsel the next day. [DE 35.] Shortly after, on March 2, 2012, Carlyle moved to withdraw his guilty plea, which I granted. [DE 41.] Five months later, on August 3, 2012, Carlyle entered into a second plea agreement with the government, and he agreed to cooperate against Smith. [DE 53.] As noted, by this point in time, Carlyle had a different attorney.

Before Carlyle's second plea agreement, on May 24, 2012, Magistrate Judge Rodovich scheduled a status hearing to discuss the issue of Smith's representation by Staples. [DE 49.] Recall that Staples had already been withdrawn as counsel for Carlyle, and at this point was representing only Smith. At this conference, Magistrate Judge Rodovich addressed the issue of Staples' suspension from the practice of law, which had recently occurred, as well as other issues. [*Id.*]

As previously explained, on August 3, 2012, the government filed a plea agreement with Carlyle. [DE 43.] I held a change of plea hearing on August 13, 2012. [DE 56.] One day after Carlyle entered into his second plea agreement (in which he agreed to cooperate), Magistrate Judge Rodovich held a status conference. At this conference, after the government indicated that Carlyle had pled guilty, the parties identified that there was a problem with the representation of Smith by Staples, as Smith expected to go to trial. Staples made an oral motion to withdraw from his representation of Smith. Smith, determined to be indigent at this point, was appointed new counsel, John Maksimovich. [DE 57.] The Court also found that due to Smith's new

4

representation, and in the best interests of Smith, a new trial date would be set and Smith's speedy trial rights would be waived until the new date. [*Id.*]

After Smith's second attorney filed one motion to continue, Smith proceeded to trial on June 3, 2013. He was convicted on all counts, though I later dismissed one count. I sentenced him to the mandatory minimum sentence of 480 months imprisonment.

**Standard of Review**

A federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States … may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Relief under § 2255 is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). A § 2255 motion is neither a "recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (citation omitted). Such relief is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)).

**Discussion**

Smith raises two arguments that he believes warrant habeas relief. First, he claims that he was denied his Sixth Amendment right to counsel because of a potential and actual conflict of interest. Second, he argues that his rights to a speedy trial – both

5

under the Speedy Trial Act and the federal constitution – were violated. I will address each claim in turn.

*Ineffective Assistance of Counsel*

Smith claims that Staples' performance was objectively unreasonable because the representation presented a conflict of interest that prejudiced him. To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) his counsel's performance "fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Hinton v. Alabama*, 571 U.S. 263, 272 (2014) (citing *Strickland v. Washington*, 466 U.S. 668, 688-94 (2009)). If the defendant cannot establish both of these factors, the claim fails. *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002). In applying this test, the court is "highly deferential to counsel," and there is a "strong presumption that counsel's decisions constitute reasonable litigation strategy." *United States v. Scanga*, 225 F.3d 780, 783-784 (7th Cir. 2000) (internal quotation marks omitted).

The Sixth Amendment entitles a defendant to conflict-free representation. *Cuyler v. Sullivan*, 446 U.S. 335, 345 (1980). A defendant, however, "may waive his right to conflict-free counsel, and, having made a knowing and intelligent waiver, may not later attack his conviction based on an asserted conflict." *United States v. Adkins*, 274 F.3d 444, 453 (7th Cir. 2001). "A waiver is 'knowing and intelligent' if it is 'made with sufficient awareness of the relevant circumstances and likely consequences.'" *Id.* (quoting *United States v. Lowry*, 971 F.2d 55, 60 (7th Cir. 1992)).

6

Smith argues that Staples' performance was unreasonable because he did not obtain a written waiver of the possible conflict or informed consent to the representation, in violation of the Indiana Rules of Professional Conduct. As Smith concedes, however, a violation of an ethical or professional rule of conduct does not necessarily make out a denial of the Sixth Amendment guarantee of counsel. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986). Instead, the question is whether counsel's assistance was "constitutionally deficient in that 'counsel made errors so serious that counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 164-65 (quoting *Strickland*, 466 U.S. at 687). Failing to obtain a written waiver of a potential conflict of interest in these circumstances does not even come close to this standard.

Smith's argument also disregards his own colloquy with the Magistrate Judge in this case. At the arraignment hearing on April 19, 2011, five days after Smith's initial appearance, the Magistrate Judge immediately raised the issue of Staples' representation of both Smith and Carlyle. The government indicated that there was a potential conflict but that it could be waived. So Magistrate Judge Rodovich engaged in the following exchange:

> **The Court:** Mr. Smith, do you understand that Mr. Staples will be representing both you and Mr. Carlyle?
>
> **Defendant Smith:** Yes.
>
> **The Court:** And you have the right to be represented by your own attorney if you choose. There are potential problems when one attorney represents two defendants. I cannot give you an example of each and every potential problem, but there are some common problems.

7

> For example, the strength of the government's case may vary with respect to one defendant and the other defendant; so if Mr. Staples brings out some evidence that is favorable to one client, it may be unfavorable to the other client.
>
> Do you understand that?
>
> **Defendant Smith:** Yes.
>
> **The Court:** You also have the right to testify, if you choose, just as Mr. Carlyle does. However, if you testify, or if Mr. Carlyle testifies, there may be some evidence beneficial to you that would implicate him or vice versa.
>
> Do you understand that?
>
> **Defendant Smith:** Yes.
>
> **The Court:** And one final example, and again, there are several – there's an unlimited possibility of potential conflicts, but a third common example is **sometimes the government seeks cooperation from one defendant in exchange for a favorable plea agreement.**
>
> **So if Mr. Staples is representing both you and Mr. Carlyle, he could not negotiate a plea agreement that would require you to testify against his other client.**
>
> Do you understand that?
>
> **Defendant Smith:** Yes.

[DE 217 at 2-3 (emphasis added).]

Not only did Magistrate Judge Rodovich describe the problems inherent in dual representation, he also addressed the precise situation that Smith alleges arose here – Carlyle's cooperation and plea agreement. "[F]or a defendant's waiver to be valid, the judge need only inform each defendant of the nature and importance of the right to conflict-free counsel and ensure that the defendant understands something of the consequences of a conflict." *United States v. Turner*, 594 F.3d 946, 952 n.1 (7th Cir. 2010)

8

(internal quotation marks omitted). Based on the record, there can be no question that Magistrate Judge Rodovich obtained a valid waiver.

Despite recognizing this conversation took place on the record, Smith insists that his initial counsel should have been the one to obtain the waiver, which must have been in writing. He says that he never discussed this potential conflict of interest with Staples. But Smith's claim directly contravenes his statement at the April 19, 2011 hearing. Magistrate Judge Rodovich expressly asked him whether or not he had spoken to Staples about his representation of both him and Carlyle. After discussing the three problems with dual representation quoted above, Magistrate Judge Rodovich inquired:

> **The Court:** And have you discussed this fact with Mr. Staples?
> **Defendant Smith:** Yes.

[DE 217 at 3.]

What's more, Magistrate Judge Rodovich himself obtained a clear waiver of any potential conflict in the most unequivocal of terms:

> **The Court:** And are you satisfied with the fact that Mr. Staples is representing both you and your co-defendant?
> **Defendant Smith:** Yes.

[*Id.* at 4.]

Finally, Magistrate Judge Rodovich informed Smith directly that if Smith ever felt uncomfortable with the dual representation, and if Smith couldn't afford to hire another attorney, the Court would appoint one to represent him. Smith acknowledged

that he understood and he had no questions for the Court. [*Id.*] And, of course, later on, that is precisely what happened.

I fail to see what difference it makes whether it was Smith's attorney or Judge Rodovich who obtained the waiver. The Sixth Amendment cannot possibly require the waiver be obtained by his attorney. That is because, as the Supreme Court has recognized, ineffective assistance of counsel that amounts to a violation of the Sixth Amendment occurs only where there is prejudice. Whether the waiver was obtained by Smith's attorney or by the Court, the effect was the same: Smith knowingly and intelligently waived his right to conflict-free representation, erasing any possible prejudice of Staples' alleged failure to do the same. As a result, whatever Staples did or did not do is beside the point. Smith's counsel was not ineffective, and he is not entitled to relief on this grounds.

Smith also claims that Staples was ineffective because he limited his representation to negotiating a plea deal and refused to represent Smith at trial. Smith seems to suggest that this constitutes ineffective assistance because it contributed to the delay that occurred. This argument must be rejected for several reasons. First, given the strength of the case, it was completely reasonable for Staples to have encouraged his client to consider accepting a plea offer from the government. As Smith indicates, Staples' view was that Smith would "die in prison" if he went to trial. [DE 213 at 2 ¶3.] Given the charges Smith was facing, and in particular the mandatory minimum sentence that would (and did) apply, it strikes me as entirely prudent for Staples to have advised Smith to consider avoiding trial.

Second, Smith's own claims about the limiting of his representation to plea negotiations are fraught with contradictions. On the one hand, Smith argues that Staples had no intention of ever going to trial as Smith wanted. But on the other hand, he acknowledges that he discussed a possible trial defense with Staples (albeit not until 11 months after the indictment) and paid him more money in anticipation of Staples representing Smith at trial. [*Id.* at 2 ¶5.] Moreover, Staples consistently represented to the Court that he needed more time to prepare for trial. [*E.g.*, DE 15, 37.]

Finally, any prejudice from Staples' supposedly limiting the scope of his representation to plea negotiations was removed when Smith was appointed new counsel. Smith's second attorney prepared for, and represented Smith, at trial, and there has been no charge of ineffective assistance for his performance. As explained more fully below, there also was not a violation of Smith's rights to a speedy trial, so there also was no prejudice due to the delay. Thus, this claim must also be rejected.

*Right to a Speedy Trial*

Smith next claims that his rights to a speedy trial under both the Speedy Trial Act and the federal constitution were violated. As an initial matter, it appears that Smith has procedurally defaulted this claim. Although the government doesn't argue this point, a district court may consider *sua sponte* whether a movant has procedurally defaulted a claim unless the government has affirmatively waived the issue. *Varela v. United States*, 481 F.3d 932, 936 (7th Cir. 2007) (affirming district court's denial of § 2255 motion on procedural default grounds not expressly raised by government); *see also Henderson v.*

11

*Thieret*, 859 F.2d 492, 498 (7th Cir. 1988) (applying the rule in the § 2254 context); *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (same).

Smith never once invoked his right to a speedy trial in the proceedings before me, and he didn't do so on appeal. [*See* DE 23 in Case No. 14-1119 (filed Oct. 15, 2014).] Ordinarily, an issue not raised in the district court or on appeal is procedurally defaulted and cannot serve as grounds for habeas relief unless the petitioner demonstrates cause and prejudice to excuse his default or shows that he is actually innocent. *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016).

Because the government never asserted procedural default, Smith understandably did not argue cause and prejudice. However, based on my review of the record, it does not appear that there would be any grounds for excusing this procedural default. Ineffective assistance of counsel could constitute cause for failure to raise an issue, *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994), but Smith does not even attempt to argue that his *appellate* counsel was ineffective for failing to raise the issue on his direct appeal (or for any other reason).

Nonetheless, I recognize that the government never raised procedural default. Moreover, the authority of the district court to *sua sponte* raise procedural default has typically been applied in the § 2254 context, where concerns about federalism, comity, and respect for state court judgments are present. *But see Varela*, 481 F.3d at 936 (applying this rule in the § 2255 context and citing cases employing it in the § 2254 context without any analysis). So I will not rest my decision on procedural default and instead will address the merits of Smith's claims.

### 1. Sixth Amendment

The Sixth Amendment guarantees an accused "the right to a speedy and public trial." U.S. Const. amend. VI. The constitutional right to a speedy trial is triggered when an indictment is returned against a defendant. *United States v. Arceo*, 535 F.3d 679, 684 (7th Cir. 2008). The Supreme Court has identified four factors that are relevant in determining whether the Sixth Amendment right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) the prejudice to the defendant caused by the delay. *United States v. Koller*, 956 F.2d 1408, 1413 (7th Cir. 1992) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

The first factor, the length of delay, acts as a "triggering mechanism." Unless the amount of time that has elapsed between accusation and trial is presumptively prejudicial, the Court need not conduct a searching analysis of all of the factors. *United States v. Oriedo*, 498 F.3d 593, 597 (7th Cir. 2007). The Seventh Circuit considers delays that approach one year presumptively prejudicial. *Id.* In this case, Smith made his first appearance on April 14, 2011, [DE 7] and his trial began on June 3, 2013, [DE 94.] This delay of just over two years is long enough to trigger a more searching analysis.

The second factor is which party is more to blame for the delay. When analyzing which party is more to blame, "the reason for the delay is generally the focus inquiry." *United States v. Hills*, 618 F.3d 619, 630 (7th Cir. 2010). Delays resulting from defense counsel's need to prepare are attributable to the defendant, while delays resulting from

a trial court's schedule are ultimately attributed to the government, though they are weighted less heavily. *Id.*

Here, Smith's first attorney sought four continuances and his second attorney sought one. Smith's co-defendant's attorney also sought one continuance. The government, on the other hand, sought zero. The Court only once *sua sponte* ordered a continuance, and even then it was based on Smith's desire to obtain new counsel. Thus, the entire reason for the two-year delay was due to defense counsel.

Although Smith argues that these requests should be attributed to Smith's counsel, not Smith himself, the Seventh Circuit has recognized that "there is no requirement that counsel obtain the defendant's consent prior to making purely tactical decisions such as the decision to seek a continuance." *Id.* at 628. That is because, unlike the right to a jury trial or the right to testify on one's own behalf, the right to a speedy trial is not one of those fundamental rights that are personal to the defendant. *Id.* at 627. So despite Smith's insistence now that the delay was not his own fault, the delay is nonetheless attributed to the defense.

The third factor points strongly to finding that there is no Sixth Amendment violation. Smith did not raise his right to a speedy trial once, either in the two years leading up to his trial or on appeal before the Seventh Circuit. To the contrary, as explained above, his attorneys asked for all of the continuances — except one requested by his co-defendant — that contributed to the delay. As a result, notwithstanding Smith's newly raised objection to the delay, because he did not ever assert his speedy trial rights, this factor cuts heavily against Smith.

I turn to the final factor, prejudice resulting from the delay. The Sixth Amendment right exists in order to prevent oppressive pretrial incarceration, minimize anxiety and concern of the accused, and limit the possibility that the defense will be impaired. *Id.* at 632. "[A]s long as the government shows reasonable diligence in prosecuting its case, a defendant who cannot demonstrate prejudice with specificity will not show a Sixth Amendment violation, no matter how long the delay." *Id.*

Here, Smith offers a few potential ways in which he says he was prejudiced. He claims he was subject to solitary confinement during pretrial detention and the delay allowed the government to obtain Carlyle's cooperation, making the case significantly more challenging for Smith and his new attorney to defend. But the delay also cut the other way. As both of Smith's attorneys realized, the trial required extensive preparation and plea negotiations. The delays – that, again, Smith's attorneys asked for – helped them prepare for Smith's trial and allowed them more time to negotiate for a plea deal (even if those negotiations turned out to be fruitless). And although the government was able to secure another key witness against Smith, the government's case was already overwhelming. In any event, Carlyle cooperated nearly a year before the case ultimately went to trial. With respect to Smith's argument that the delay resulted in a two-year pretrial detention period, Smith fails to acknowledge that he was convicted and sentenced to 480 months. Those two years are credited towards his sentence, making the prejudice here minimal at best.

Because Smith was responsible for nearly all of the delay in his trial date, and because he has failed to show that he suffered any prejudice, he also has failed to show

a constitutional speedy trial violation. So even if he had not procedurally defaulted this claim, it would nevertheless not be grounds warranting habeas relief.

*2.Speedy Trial Act*

The Speedy Trial Act is a statutory provision, distinct from the Sixth Amendment's guarantee of a speedy trial. It requires criminal trials to commence within 70 days of the indictment or the defendant's initial appearance, whichever is later. 18 U.S.C. § 3161(c)(1). The Act recognizes however that certain delays are justifiable and permits this time to be excluded from the 70-day clock. *Id.* § 3161(h); *see also United States v. O'Connor*, 656 F.3d 630, 635-36 (7th Cir. 2011). Examples of such delays include delays resulting from any pretrial motion, 18 U.S.C. § 3161(h)(1)(D), a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run, *id.* § 3161(h)(6), and any period of delay resulting from a continuance requested by the defendant or his counsel if the judge finds that the ends of justice served by the continuance outweigh the interest of the public and defendant in a speedy trial, *id.* § 3161(h)(7)(A).

At the outset, I note that a violation of the Speedy Trial Act strikes me as an improper ground for relief under § 2255. That is because it is not an error of constitutional or jurisdictional magnitude, particularly in cases such as this one in which the defendant never even raised the issue in the first place. To obtain relief, Smith would have to show that, despite his never raising the issue, the Speedy Trial Act violation alleged here constitutes a fundamental defect in the trial that resulted in a complete miscarriage of justice. *See United States v. Addonizio*, 442 U.S. 178, 185 (1989);

*see also United States v. Cook*, 48 F. Supp. 2d 776, 777-78 (N.D. Ill. 1999). That is surely a tall task.

My skepticism aside, a review of the record reveals that there was no Speedy Trial Act violation. Smith's initial appearance was on April 14, 2011, and he proceeded to trial 780 days later on June 3, 2013. However, the overwhelming majority of this time was excluded from Speedy Trial Act calculations pursuant to the exceptions listed in § 3161(h).

Here is a chart summarizing the days excluded from Speedy Trial Act calculations:

| Time period | Docket Entry | Dates | Days Excluded |
|---|---|---|---|
| Pretrial motions period | DE 10 | April 19, 2011 to May 17, 2011 | 28 |
| First motion to continue | DE 15, 19 | June 2, 2011 to next filing | 69 |
| Second motion to continue | DE 20, 21 | August 10, 2011 to next filing | 61 |
| Third motion to continue | DE 26, 27 | October 10, 2011 to next filing | 110 |
| Fourth motion to continue | DE 37, 38 | January 28, 2012 to next filing | 107 |
| Co-defendant's motion to continue | DE 46, 48 | May 14, 2012 to status hearing | 92 |
| Status hearing | DE 57 | August 14, 2012 to next filing | 125 |
| Fifth motion to continue | DE 66, 67 | December 17, 2012 to jury trial | 168 |

Most of the time was excluded from Speedy Trial Act calculations because it was the result of continuances requested by the defendant's counsel and the judge found that the ends of justice served by the continuances would outweigh the interest of the

17

public and defendant in a speedy trial pursuant to § 3161(h)(7)(A). One period of delay was attributed to Carlyle, but this is also excluded for Smith's calculations because they were co-defendants and no motion to sever had been granted. *See* 18 U.S.C. § 3161(h)(6).

In all, delays resulting from six motions to continue filed by the defense are excludable time. So, this time includes (1) 69 days from June 2, 2011 to August 10, 2011 [DE 15, 19]; (2) 61 days from August 10, 2011 to October 10, 2011 [DE 20, 21]; (3) 110 days from October 10, 2011 to January 28, 2012 [DE 26, 27]; (4) 107 days from January 28, 2012 to May 14, 2012 [DE 46, 48]; and (5) 168 days from December 17, 2012 to the jury trial on June 3, 2013.

At the status hearing on August 14, 2012, the Court ordered the trial date postponed because Staples had just moved to withdrawn and Smith required new counsel. The Court expressly found that due to the problem of attorney representation and in the best interest of the defendant and the public, Smith's rights under the Speedy Trial Act were waived until the new date for trial. [DE 57.] Thus, this time is also excluded.

Adding together all of this time, 760 days are excluded from Speedy Trial Act calculations. That leaves 20 days of non-excludable time, which is well within the confines of the Speedy Trial Act requirement of 70 days. Accordingly, there was no Speedy Trial Act violation, and even if claim had not been procedurally defaulted, it would not provide a basis for granting Smith's motion.

*3. Ineffective Assistance for Failure to Raise Speedy Trial Issues*

To the extent that Smith claims that his trial counsel was also ineffective for failing to invoke Smith's rights to a speedy trial, that claim is not procedurally defaulted because ineffective assistance claims may be raised for the first time on collateral review. *Vinyard v. United States*, 804 F.3d 1218, 1227 (7th Cir. 2015) (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)). Smith's claim nonetheless fails for all of the reasons I have already explained. Because there was no violation of Smith's rights under the Speedy Trial Act or the Sixth Amendment, there was no reason for Smith's trial counsel to object to the delay between his arraignment and trial. Thus, there was no deficient performance on the part of trial counsel.

**Certificate of Appealability**

Because I am denying Smith's § 2255 motion, I must consider whether to grant a certificate of appealability on any of his claims. *See* Rules Gov. § 2255 Procs. 11(a). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In other words, Harris must show that reasonable jurists could debate whether his petition should have been resolved differently. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). I am entirely unpersuaded that reasonable jurists could reach a different conclusion about Smith's right to relief on any of the grounds asserted in his motion under § 2255, and so I will deny a certificate of appealability.

## Conclusion

For the reasons stated above, Smith's Motion to Vacate must be denied. Smith has also requested an evidentiary hearing. A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Such is the case here, and I will deny Smith's request for a hearing.

**ACCORDINGLY:**

John Smith's Motion to Vacate under 28 U.S.C. § 2255 [DE 211] is **DENIED**, and I **DECLINE** to issue a Certificate of Appealability.

**SO ORDERED.**

ENTERED: September 21, 2018.

                                         s/ Philip P. Simon
                                         JUDGE
                                         UNITED STATES DISTRICT COURT